## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ISELA V. MARQUEZ and FERNANDO MARQUEZ, as plenary co-guardians of CHLOE MARQUEZ, a disabled person, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) ) | No. 21-CV-3369 Hon. Marvin E. Aspen |
| RIVEREDGE HOSPITAL, INC., an Illinois Corporation, doing business as RIVEREDGE HOSPITAL, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Isela and Fernando Marquez bring this action against Defendant Riveredge Hospital, Inc. ("Riveredge") as plenary co-guardians of their daughter, Plaintiff Chloe Marquez. (Complaint ("Compl.") (Dkt. No. 1) at 1.)[1] Chloe, through her parents, alleges that Riveredge violated Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and Section 1557 of the Patient Protection and Affordable Care Act ("ACA") by failing to accommodate Chloe's disabilities. (*See generally* Compl.) Riveredge has moved to dismiss Chloe's requests for declaratory and injunctive relief under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. (Defendant's Motion to Dismiss Plaintiff's Complaint ("Motion") (Dkt. No. 11) at 1–2; Defendant's Memorandum of Law in Support of Its Motion to Dismiss ("Memo") (Dkt. No. 12) at 3, 8–12.) Riveredge has also moved to dismiss all of Chloe's claims

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Motion at 1–2; Memo at 12–14.) For the reasons set forth below, we grant Riveredge's Motion in part and deny it in part.

## BACKGROUND

The following facts come from the Complaint, which we deem to be true for the purposes of this Motion. *See Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Chloe Marquez is 22 years old and resides in Orland Park, Illinois with her parents Isela and Fernando Marquez. (Compl. ¶ 4.) Chloe has cerebral palsy and difficulty swallowing. (*Id*.) As a result of these conditions, she eats a puree diet, uses a gastronomy tube, moves around with a wheelchair, and communicates with others via a text-to-speech function on her iPad. (*Id*. ¶ 9.) She has a history of depression that stems from her conditions, and she will likely require treatment for her depression from time-to-time. (*Id*. ¶¶ 1,8.)

Riveredge is a free-standing psychiatric hospital in Forest Park, Illinois, offering "specialized inpatient and outpatient behavioral care to children, adolescents, young adults, and adults." (*Id*. ¶ 5.) Riveredge represents "that it has the only specialized inpatient behavioral health program for adults with an intellectual or developmental disability." (*Id*.) It receives both Medicare and Medicaid reimbursement from the federal government. (*Id*. ¶ 7.) Riveredge is approximately 24 miles from Chloe's home and accepts Chloe's insurance. (*Id*. ¶ 8.)

On June 22, 2019, Isela noticed that Chloe had a linear abrasion on her neck. (*Id*. ¶ 10.) When Isela asked Chloe about the abrasion, Chloe admitted that she had attempted to commit suicide. (*Id*.) Isela immediately called Chloe's psychiatrist for guidance but was unable to reach the psychiatrist until the following day. (*Id*. ¶¶ 10, 11.) The psychiatrist told Isela that she

should take Chloe to Northwestern Memorial Hospital's ("NMH") emergency department.  (*Id*. ¶ 11.)  There, doctors recommended that Chloe receive inpatient care at a mental and behavioral hospital that could address her needs.  (*Id*. ¶¶ 11, 12.)

On June 25, 2019, an NMH crisis intervention team social worker called Riveredge to see if Riveredge could treat Chloe.  (*Id*. ¶ 13.)  A Riveredge employee told the social worker that Riveredge could not accept Chloe due to her cerebral palsy.  (*Id*.)  Almost two years later, on May 25, 2021, Isela called Riveredge to ask whether it would accept Chloe if she needed to be admitted.  (*Id*. ¶ 14.)  "After learning that Chloe utilizes a power wheelchair, the [Riveredge] employee emphatically told [Isela] that they would definitely not accept [Chloe] as an inpatient but may be [sic] as an outpatient."  (*Id*.)  According to the Complaint, Chloe intends to seek treatment from Riveredge once Riveredge complies with its federal nondiscrimination mandates.  (*Id*. ¶ 8.)

## LEGAL STANDARD

### I.    Rule 12(b)(1) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A court may only address the merits of a case if it has subject-matter jurisdiction to do so.  *See McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit.")  The plaintiff bears the burden of establishing that the court has jurisdiction.  *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

### II.    Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case.  *McReynolds v. Merrill Lynch*

& Co., 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo*, 526 F.3d at 1081. Courts may grant motions to dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. at 1949. Although a facially plausible complaint need not provide "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that a defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (internal quotation marks and citations omitted).

## ANALYSIS

### I. Rule 12(b)(1) Motion to Dismiss for Lack of Standing

Riveredge challenges Chloe's standing to pursue both declaratory and injunctive relief under the ADA, Rehabilitation Act, and ACA. (*See* Memo at 3.) Below, we consider whether Chloe has standing to seek each of those forms of relief.

4

### A.    Injunctive Relief

Chloe seeks injunctive relief in connection with each of the counts in her complaint.  *See* (Compl. at 8 (violation of the ADA and its implementing regulations applicable to public accommodations); 11 (violation of the Rehabilitation Act); 14 (violation of the ACA).)  As a remedy for her ADA count, Count I, Chloe seeks "[a]n order enjoining [Riveredge] from discriminating against [her], requiring [Riveredge] to (i) adopt and implement an inpatient admissions policy that does not screen out patients with physical disabilities; (ii) make available qualified staff to assist [Chloe] with her activities of daily living, as needed; (iii) provide its appropriate employees training on the foregoing admissions policy; (iv) provide its appropriate employees with disability cultural competency training; and [(v)] remove existing architectural barriers where readily achievable."  (*Id.* at 8.)  Her requests for injunctive relief are substantially similar for Counts II (violation of the Rehabilitation Act) and III (violation of the ACA).  (*See id.* at 11 (Rehabilitation Act), 14 (ACA).)

Courts considering whether a plaintiff has standing to pursue injunctive relief under the ADA, Rehabilitation Act, and ACA for claims like Chloe's apply the standard applicable to ADA claims.  *See Marquez v. Bd. of Trs. of the Univ. of Ill.*, Case No. 21-cv-3357, 2022 WL 326967, at *2–3 (N.D. Ill. Feb. 3, 2022); *Marquez v. BHC Streamwood Hosp., Inc.*, Case No. 20-cv-4267, 2021 WL 4282948, at *3–4 (N.D. Ill. Sept. 21, 2021).  To seek prospective injunctive relief under the ADA, "a plaintiff must allege past injury under the ADA; show that it is reasonable to infer from her complaint that this discriminatory treatment will continue; and show that it is also reasonable to infer, based on the past frequency of her visits and the proximity of the public accommodation to her home, that she intends to return to the public accommodation in

the future." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (internal

quotation marks and citation omitted).

Riveredge argues that Chloe does not have standing to pursue injunctive relief because

she has not alleged facts to show that she intends to seek treatment from Riveredge in the future.

(Memo at 8–12.)  In response, Chloe maintains that she has satisfied the applicable pleading

requirements and contends that Riveredge is improperly asking us to question her credibility

when she says that she intends to return to Riveredge.  (Plaintiff's Response to Defendant's

Motion to Dismiss ("Opp'n") (Dkt. No. 16) at 7–14.)

In two substantially similar cases filed by Chloe's parents in this District against other

healthcare facilities, courts have concluded that Chloe does not have standing to seek injunctive

relief against the defendant healthcare facilities.  *See Bd. of Trs.*, 2022 WL 326967, at *3–4;

*BHC Streamwood*, 2021 WL 4282948, at *3–4.  Both courts reasoned that the operative

complaints contained insufficient facts from which to conclude that Chloe would likely seek

treatment from defendants' facilities in the future.  *See Bd. of Trs.*, 2022 WL 326967, at *3; *BHC

Streamwood*, 2021 WL 4282948, at *4.  In those cases, as here, the complaints alleged that

Chloe intends to seek treatment from defendants once they comply with federal

nondiscrimination mandates.  *See* (Compl. ¶ 8); *Bd. of Trs.*, 2022 WL 326967, at *3 ("Plaintiffs

assert that . . . if UI Health complies with the law, she intends to return to the hospital.") (internal

quotation marks and citation omitted); *BHC Streamwood*, 2021 WL 4282948, at *4 ("[E]ach

Plaintiff in this case makes only one statement with respect to her future plans: 'Upon the

Hospital's compliance with its federal nondiscrimination mandates, she intends to return to

Streamwood Hospital.'") (internal citations omitted).  Likewise, as is the case here, Chloe's first

and only attempt to seek admission to defendants' healthcare facilities was after her 2019 suicide

6

attempt. *See* (Compl. ¶¶ 12, 13); *Bd. of Trs.*, 2022 WL 326967, at *1, *3; *BHC Streamwood*, 2021 WL 4282948, at *2, *4. Further, like she has done in this case, Chloe alleged in *Board of Trustees* and *BHC Streamwood* that she suffers from a chronic condition that might require treatment in the future. *See Bd. of Trs.*, 2022 WL 326967, at *3; *BHC Streamwood*, 2021 WL 4282948, at *4. Yet even this fact was insufficient to confer standing because it does not necessarily follow that a plaintiff suffering from a chronic condition will seek treatment at a particular facility should the need arise. *See BHC Streamwood*, 2021 WL 4282948, at *4 ("While Plaintiffs have histories of anxiety and depression which have and will likely from time to time require intervention or treatment on an inpatient or outpatient basis, their need for ongoing psychiatric care does not establish that they will need to return to Streamwood.") (internal quotation marks and citations omitted); *see also Bd. of Trs.*, 2022 WL 326967, at *3 (citing *Ayling v. Mem'l Health Sys.*, No. 19-cv-3091, 2019 WL 2234061, at *3 (C.D. Ill. May 23, 2019) and *Jeuch v. Child.'s Hosp. and Health Sys., Inc.*, 353 F. Supp. 3d 772, 786–87 (E.D. Wis. 2018) as instances in which plaintiffs did not have standing to pursue injunctive relief despite continued or likely need for future care based on health conditions). Accordingly, neither complaint contained sufficient facts from which the court could conclude that Chloe had standing to seek injunctive relief. *See Bd. of Trs.*, 2022 WL 326967, at *3–4; *BHC Streamwood*, 2021 WL 4282948, at *3–4.

We find the reasoning in *Board of Trustees* and *BHC Streamwood*, and the authority cited therein, to be persuasive, especially because the facts that these opinions addressed are substantially similar to the facts here. Our case differs in that Chloe not only sought treatment from Riveredge after her suicide attempt in 2019, but her mom also called Riveredge in 2021 and asked whether Riveredge would accept Chloe if she needed to be admitted. (*See* Compl. ¶¶ 13,

7

14.)  Additionally, Riveredge is slightly closer to Chloe's home than the healthcare facilities at issue in *Board of Trustees* and *BHC Streamwood*.  *Compare Bd. of Trs.*, 2022 WL 326967, at *1 (noting that Chloe lives 29 miles from defendant's facility) *and BHC Streamwood*, Case No. 20-cv-4267 (Dkt. No. 16) ¶ 8 (alleging that Chloe lives "approximately 46 miles" from BHC Streamwood), *with* (Compl. ¶ 8 (alleging that Riveredge "is approximately 24 miles from Chloe's residence").  The question is whether these facts alter our analysis.  We conclude that they do not.

A plaintiff does not have standing to seek injunctive relief for ADA violations where she merely professes her intent to seek treatment at a place where she faced discrimination in the past.  *See Scherr*, 703 F.3d at 1074 ("[P]laintiffs' professions of an intent to return to the places they had visited before . . . is simply not enough.  Such some day intentions—without any description of concrete plans, or indeed even any specifications of *when* the some day will be—do not support a finding of the actual or imminent inquiry that our cases require.") (internal quotation marks and citations omitted).  In the medical context specifically, it can be difficult to assess whether a person's intent to seek treatment at a medical facility is sufficiently concrete, given that the need for medical assistance may arise unexpectedly.  *See Jeuch*, 353 F. Supp. 3d at 786 ("Assessing whether [plaintiff's] expressed intentions are sufficiently concrete to convey standing is made difficult given the nature of emergency room visits and hospital admissions.").  To address that issue, courts consider such factors as whether there is an established relationship between a plaintiff and a defendant's facility and the proximity of a defendant's facility to plaintiff's home.  *Compare Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 832 (11th Cir. 2017) (standing found where plaintiff alleged that "[d]ue to many factors, including the location of my doctors, the fact that Defendants have all of my medical records and history, the proximity

to my home, and history of prior care/treatment, it is likely I will visit and receive treatment at Defendants' hospitals"), *with Jeuch*, 353 F. Supp. 3d at 786 (no standing where plaintiff's "claim of standing boils down to this: she lives in the Milwaukee area, has children, and, if those children unexpectedly need emergency medical care or hospitalization, there is a possibility, based in part upon the fact that she has done so in the past, that she will seek care at Children's Hospital instead of at one of the closer hospitals to which she has also taken her children before").

Chloe has only sought treatment from Riveredge once—in 2019. (*See* Compl. ¶ 13.) In 2021, Chloe's mother asked Riveredge if Riveredge would be able to treat Chloe at some unspecified point in time, but she did not actually seek to have Chloe treated or admitted at that time. (*See id.* ¶ 14.) The hypothetical posed by Chloe's mother makes Chloe's intent to seek treatment at Riveredge no more concrete than her plans vis-à-vis the University of Illinois or BHC Streamwood. *See Bd. of Trs.*, 2022 WL 326967, at *3–4; *BHC Streamwood*, 2021 WL 4282948, at *3–4. And Chloe has not offered any additional facts to suggest that she is more likely to visit Riveredge than any other hospital. For example, Chloe does not allege that she sought treatment from Riveredge on multiple occasions or that Riveredge is closer to her home than other hospitals offering inpatient psychiatric services. (*See generally* Compl.) Nor does she allege that her doctors have admission privileges at that facility. (*Id*.) In short, Chloe does not allege facts suggesting that it is likely that she will seek treatment from Riveredge should the need arise.

For these reasons, we conclude that Chloe does not have standing to seek injunctive relief from Riveredge. Each of the counts in the Complaint are dismissed to the extent that they seek injunctive relief.

B.      **Declaratory Relief**

For each count, Chloe also seeks a declaration that (1) Riveredge discriminates against Chloe "in denying [her] access to its facilities and services" and (2) Riveredge does not "have a nondiscriminatory admission policy as required by law." (Compl. at 8; *see also id*. at 11, 14.) Riveredge asserts that Chloe does not have standing to seek declaratory relief but does not provide any reasoning for this assertion in its briefing. (*See* Memo at 3, 8–12.)

Parties typically waive cursory arguments or arguments that are not supported by pertinent authority. *Gross v. Town of Cicero*, 619 F.3d 697, 705 (7th Cir. 2010) (plaintiff waived an argument that was not fully developed); *United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]") (internal quotation marks and citations omitted). However, federal courts "have an independent duty to ensure subject-matter jurisdiction, and neither the parties nor their lawyers may waive arguments that the court lacks jurisdiction." *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010) (internal citations omitted); *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000) ("No court may decide a case without subject matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction."). Therefore, we consider whether Chloe has standing to seek declaratory relief for her claims in this case.

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S. Ct. 764, 770 (2007) (quoting 28 U.S.C. § 2201(a)). Declaratory judgments are limited to disputes that are "definite

and concrete" and "real and substantial"—not for setting forth the law based on "a hypothetical state of facts." *Id*. at 127, 127 S. Ct. at 771 (internal quotation marks and citations omitted). To determine whether a person has standing to seek a declaratory judgment, "'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune*, 549 U.S. at 127, 127 S. Ct. at 771 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941)).

Chloe seeks a declaration regarding discriminatory acts that allegedly already occurred or that might hypothetically occur in the future (Riveredge discriminates against Chloe "in denying [her] access to its facilities and services"), as well as a declaration regarding Riveredge's current admission policies. We consider each request in turn, starting with the request for a declaration that Riveredge discriminates against Chloe "in denying [her] access to its facilities and services."

At least a couple of courts within this circuit have concluded that declaratory relief is inappropriate where a private plaintiff seeks relief for discriminatory acts that have already occurred. *See, e.g., Est. of Wobschall v. Ross*, 488 F. Supp. 3d 737, 745 n.1 (E.D. Wis. 2020) ("Declaratory relief is not appropriate for these private ADA and Rehabilitation Act claims. . . . [T]he contested action has already occurred, leaving no unsettled rights or legal obligations that cast uncertainty on the parties' future dealings with one another."); *Field v. Housing Auth. of Cook Cnty.*, No. 17-cv-02044, 2018 WL 3831513, at *10 (N.D. Ill. Aug. 13, 2018) (striking request for a declaration that defendant violated the ADA and § 504 of the Rehabilitation Act because the requested declaration "concern[ed] injuries that ha[d] already occurred," granting the requested relief "would not prevent accrual of any avoidable damages," and the requested relief

11

"would do nothing to clarify the legal relations between the parties for any future litigation"). To the extent that Chloe's request for a declaration regarding Riveredge's denial of access to its facilities and services relates to events that have already occurred, granting the request would not prevent the accrual of avoidable damages or otherwise clarify the legal relations between the parties. *See Estate of Wobschall*, 488 F. Supp. 3d at 745 n.1; *Field*, 2018 WL 3831513, at *10. And to the extent that this request relates to events that might occur in the future, it improperly depends on a hypothetical. *MedImmune*, 549 U.S. at 126, 127 S. Ct. at 771. Chloe therefore does not have standing to seek a declaration that Riveredge discriminates against her "in denying [her] access to its facilities and services."

Chloe does not have standing to pursue her request for a declaration that Riveredge "fails to have a nondiscriminatory admission policy as required by law" for a different reason: Chloe has not alleged sufficient facts from which to conclude that she currently suffers, or is likely to suffer in the future, from Riveredge's purported failure to have a nondiscriminatory admissions policy. As noted above, Chloe alleged that she only sought treatment from Riveredge once—in 2019 (*See* Compl. ¶ 13)—and she has not stated sufficient facts from which we can infer that she is likely to seek treatment from Riveredge at a later time. Although Chloe might have been affected by Riveredge's allegedly unlawful admission policy in the past, she has not shown "any continuing, present adverse effects" that would give her standing to pursue the declaration that she seeks. *See Wis. Carry Inc. v. City of Milwaukee*, 35 F. Supp. 3d 1031, 1036 (E.D. Wis. 2014) (internal quotation marks and citations omitted). Nor does she allege sufficient facts from which we can infer that she is likely to be subject to Riveredge's admission policy in the future. *See id.* at 1034, 1036–37 (concluding that plaintiffs did not have standing to seek a declaration that certain city policies concerning the return of guns seized as evidence were unconstitutional

because their guns had been returned, and they had not alleged that they were likely to be subjected to those policies in the future).  Accordingly, we dismiss Chloe's request for declaratory relief as well.

* * *

For the reasons set forth above, we dismiss Chloe's requests for injunctive and declaratory relief.[2]  Because injunctive relief is the only relief available for Chloe's ADA claim, Count I is dismissed in its entirety.  *See Bd. of Trs.*, 2022 WL 326967, at *4 n.2 ("Unfortunately, an injunction is the only remedy authorized for private parties suing under the ADA for discrimination in public accommodations.  Money damages are not available.") (internal quotation marks and citations omitted); *Mims v. Rodeway Inn & Suites*, Case No. 17-cv-238-wmc, 2019 WL 1283867, at *1 (W.D. Wis. Mar. 20, 2019) (same).  We now turn to the question of whether Count II (Rehabilitation Act) and Count III (ACA) survive Riveredge's Rule 12(b)(6) challenge.

## II.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794(a).  "To state a claim under Section 504 of the Rehabilitation Act, a complaint must allege that: (1) plaintiff is a

---

[2].  It is unclear whether Riveredge intended to challenge Chloe's standing to seek monetary damages for her claims under the Rehabilitation Act and ACA.  (*Compare* Motion at 2 (arguing that Chloe lacks Article III standing to pursue her claims), *with* Memo at 3, 8–12 (asserting that Chloe lacks standing to pursue her requests for injunctive and declaratory relief only).)  Regardless, we conclude that Chloe has standing to pursue this form of relief consistent with the reasoning in *Board of Trustees* and *BHC Streamwood*.  *Bd. of Trs.*, 2022 WL 326967, at *4; *BHC Streamwood*, 2021 WL 4282948, at *5.

13

'handicapped individual' under the Act; (2) plaintiff is 'otherwise qualified' for the benefit sought; (3) the program in question receives federal financial assistance; and (4) plaintiff was discriminated against solely because of her handicap." *LeRoy v. Ingalls Mem'l Hosp.*, Case No. 1:20-cv-6203, 2021 WL 4264360, at *4 (N.D. Ill. Sept. 20, 2021) (citing *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019)). "Claims brought under the ACA import the same standard and burden of proof as Rehabilitation Act claims." *Id.*; *see also Bd. of Trs.*, 2022 WL 326967, at *5. For this reason, we apply the same Rule 12(b)(6) analysis to Chloe's Rehabilitation Act and ACA claims.

Riveredge argues that Chloe has failed to state a claim under the Rehabilitation Act and the ACA because she has not plausibly alleged that Riveredge denied her treatment due to her disability. (Memo at 12.) According to Riveredge, Chloe cannot maintain a claim based on the 2019 incident because her allegations are based on unfounded hearsay, and she cannot maintain a claim based on the 2021 call because Chloe's mother did not request treatment for Chloe at that time. (*Id*. at 13–14.) In response, Chloe argues that she has met the applicable pleading standard and notes that most courts have concluded that it is proper to consider hearsay when determining whether a plaintiff has established federal jurisdiction. (Opp'n at 14–15.)

Chloe has alleged sufficient facts to avoid dismissal of her claims on Rule 12(b)(6) grounds. Chloe alleges that after her suicide attempt in 2019, an NMH crisis intervention team social worker called Riveredge to see if they would be able to accept Chloe for psychiatric inpatient admission. (Compl. ¶¶ 12, 13.) A Riveredge employee allegedly responded that Riveredge "was unable to accept Chloe because of her cerebral palsy." (*Id*. ¶ 13.) At this stage, these allegations are sufficient to "permit an inference of intentional discrimination sufficient to

support" Chloe's claims. *See Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015); *see also Bd. of Trs.*, 2022 WL 326967, at \*5.

Riveredge's arguments to the contrary are unavailing. Riveredge cites no authority to support its argument that we cannot consider hearsay at the motion to dismiss stage (*See* Memo at 12–14), thereby forfeiting that argument. *See Useni*, 516 F.3d at 658. And, in any event, other courts have rejected similar arguments. *See, e.g.*, *Lewis v. City of Chicago*, 235 F. Supp. 3d 1029, 1031 (N.D. Ill. 2016) (rejecting the argument that hearsay could not be considered as part of a Rule 12(b)(6) motion); *Widmar v. Sun Chem. Corp.*, No. 11 C 1818, 2012 WL 1378657, at \*7 (N.D. Ill. Apr. 19, 2012) (rejecting the argument that plaintiff could not rely on hearsay in a defamation complaint); *In re Palermo*, No. 08 CV 7421 (RPP), 2011 WL 446209, at \*5 (S.D.N.Y. Feb. 7, 2011) ("[B]ecause the Court must accept as true all factual statements alleged in the complaint for the purposes of a motion to dismiss, whether the statements … might constitute inadmissible hearsay when relied upon for the truth of the matters asserted is simply irrelevant.") (internal quotation marks and citations omitted).

Further, because Chloe has stated a plausible claim to relief based on the 2019 incident, we need not consider whether she has a plausible claim to relief based on the 2021 incident as well. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.") (emphasis in original); *Gill-Richards v. Campanelli*, No. 20 C 00822, 2022 WL 79866, at \*2 (N.D. Ill. Jan. 7, 2022) ("So long as there is an identifiable legal theory that plausibly provides a legal remedy for a claim, a motion to dismiss that claim, or other theories advanced in support of the claim, must be denied.").

Riveredge's Rule 12(b)(6) motion is denied. Chloe may pursue her claims for monetary relief under the Rehabilitation Act and ACA.

### CONCLUSION

For the reasons set forth above, we grant Riveredge's Motion in part and deny it in part. Count I (ADA) is dismissed in its entirety and Counts II (Rehabilitation Act) and Counts III (ACA) are dismissed only to the extent that they seek injunctive and declaratory relief. Chloe may amend her Complaint by April 11, 2022, to address the issues raised herein if she can do so consistent with this opinion and Federal Rule of Civil Procedure 11.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: March 21, 2022
        Chicago, Illinois

16